Thank you and good morning, Your Honors. Jeffrey Concius, KONCIUS, on behalf of Plaintiff and Appellant, and may it please the Court. In reviewing this matter for today's argument, I think what it comes down to is a two-step process to decide how to go about deciding this appeal. And I think the first step was the one that was skipped over in the lower court. I'm sorry, could you just repeat what you just said? Sure. The first step is? I think that the first step is to decide whether California Civil Code Section 178821 actually applies. And it was assumed by the trial court below that the collection letter at issue, by having the language that says you need to update your contact information, was the trigger. And what I argued below was, is that 178821 only applies if you satisfy subsection B. And that part of the section says only if and after a creditor gives notice to a debtor do the obligations of subsection A come into effect. But I thought part of the gravamen of your argument was that 178821 did apply, and that as a result of its application, the debt collection letter was false, deceptive, unconscionable, or otherwise at odds with the provisions of the FDCPA. Well, no, Your Honor. The first question is, does 178821 apply? And our position was, no, it doesn't, because notice was never given to the debtor in this case, and that's a stipulated fact that's found in the record on page 9817. Notice was never given when? Before the debt collection letter was sent. Where does it say that it has to be done that way? Why can't it be in the debt collection letter? Well, that's the question, Your Honor. I understand that. I think the reading of 178821B suggests that it shall apply only if and after the creditor clearly and conspicuously in writing discloses such a responsibility. But they did. Subdivision A says in connection with any consumer credit existing or requested. So by its language, it applies to an existing credit. And the notice that was sent specifically gave the form that you're complaining about specifically said that the Rosenthal Act requires that you notify your creditor of any change of name, address, or employment for any existing consumer credit. Indeed, it does, Your Honor. But there is no proof in the trial court below that Grant and Weber stood in the shoes of the creditor. It said that it was sending the letter for Olympia. Okay. It happened to show that that's not true. Okay. Well, then let's move on to the second step of my argument, since the first step is not helping my cause. The second step of the argument, Your Honors, is what I tried to raise below was the preemption argument under the FDCPA. 15 U.S.C. 1692N specifically says that a state law will not be preempted if it gives greater protection to a debtor than that under the FDCPA. And our argument here is that if 178821 allows a debt collector to put in its letter, you need to give us updated information. That's in direct conflict with what the FDCPA says to a debtor who gets a debt collection letter. Under the FDCPA, a debtor who gets a letter has the right to do nothing. And that's the point of the mini Miranda warning that's included in a debt collection letter that says this is an attempt to collect a debt and any information obtained will be used for that purpose. So the idea that this collection letter triggers an obligation on the part of the debtor to give information to a debt collector to be used against him flies in the face of the language of the FDCPA. In this case, did your client have any change of address? That's not in the record, Your Honor, and not to my knowledge either. So he might not have had to do anything in response to this letter, in response to this notice under the Rosenthal Act. But the question is whether a least sophisticated debtor who gets this letter would think, oh, I need to call them up and give them information that's going to help them collect against me when, in fact, the FDCPA specifically says that a debtor doesn't have to do anything in response to a debt collection letter. Where does it say that? Well, the mini Miranda warning is in 15 U.S.C. 1692E11, and that's a requirement that a debt collection letter that's sent out by a debt collector has to say this is an attempt to collect and any information obtained will be used for that purpose. What's inconsistent? I'm sorry. Well, okay, just one follow-up. I mean, I read that. I mean, you say that that section says that the debtor doesn't have to do anything? A debtor under the FDCPA who gets a debt collection letter absolutely does not have to do anything. If they want, they have 30 days to call up and say, hey, I dispute this debt. Yeah. Or they can call up and say, I would like proof of this debt. What's different about what specifically in the Rosenthal Act collides with the 1692E11? Well, what specifically collides with the Act is that by having it on the debt collection letter itself, it's just a debt collection letter. But there's a responsibility. It doesn't say if you don't do it, something's going to happen to you. It says you have a responsibility to let your creditor know your name, rank, and serial number if any of those things change. What I'm saying is where's the collision with subparagraph 11? I mean, just in language. Well, the idea behind that subsection of the FDCPA. I'm not talking about ideas. I'm talking about text. Where's the collision with the text of 1692E11? If you're looking solely at that text for a collision, you're not going to find one. Okay. Then where am I going to find the collision if I don't find it in the text? Well, I think you're going to find the collision behind the text of the FDCPA and its purpose. And the purpose of the FDCPA is to allow a debtor who gets a debt collection letter to understand his rights. Okay. I'm sorry. I appreciate your anticipating and your initial point because that was my very concern. I don't see a collision in the text between the two acts. And in order for there to be preemption, isn't there a requirement that there be such a collision? Yes. So you're asking us to go beyond the textual collision to, I guess, some kind of an amorphous underlying intent? Is that what you're saying? No. Under 1692E, that sets out the purpose of the FDCPA. But the purpose is, you know, you could talk about general things, but why is it inconsistent with asking the debtor to provide updated information while at the same time giving them a warning that the information would be used for debt collection purposes? I don't see that as being inconsistent at all. Because you're telling the debtor that they have to do something in response to the letter when, in fact, they don't. Under the FDCPA, they have no obligation to call up upon receipt of a letter to respond to it. They can simply throw it in the garbage. You could read it that way, but the reality is if they don't do anything, then the information can't be used to help collect the debt, can it? That's true as to that subsection. What I'm saying is how the FDCPA is set up is if the debtor gets a letter, he doesn't have any obligation to do anything. He didn't hear. He didn't hear. The reality is, as was pointed out by one of my colleagues, if somebody doesn't respond, what happens? There's nothing in here about that. If they said, if you don't give us this information, we're sending some goons out to your house, that's a different matter. But that doesn't say that. It simply says you need to provide us this information if there is any change. And it then separately says whatever you provide us can be used in our attempt to collect the debt. That's not inconsistent, is it? Again, and I'm not sure I'm getting any traction here, but I think it is because I think a least sophisticated debtor who gets this letter is going to think, oh, I need to call up and provide this information when, in fact, they don't have that obligation. But, counsel, we're dealing with the law here. We're not talking about the hypothetical here. We're talking about what the law requires. And you're asking us to find that one law preempts another, and you can't really do that without some express collision in the text, as the driver has indicated. Don't you really have a non-traction situation here? I don't think so, Your Honor. And I see I'm running out of time. I'd like to reserve some time for rebuttal, so let me save my last minute to try that. Thank you. If it pleases the Court, Ronald Sargis, Hefner, Stark & Roy for Grant & Weber. And I'll try not to do myself too much harm in making my points, because I think the Court is hitting it on all cylinders. And first, I'd like to note that this debtor's contention to the trial court, and it's clearly set out in his complaint, is not just that 1788.21 shouldn't apply, but that the condition of it, which is not found in the statute, is that the law cannot apply until the debtor agrees. And that's what they've said, is the debtor has to agree in the original contract. So this argument's morphed a little bit on appeal. But even taking the argument today, the Court has it right when it says that the statement of California law does not overshadow. And if we had gotten into an issue, and the debtors never contended they did not get the notice. Again, if you read the complaint, they didn't. And if it had been raised, we would have addressed it and gone through why a collection agency serves as the agent, and why they have the right to exercise those rights under California law, and the restatement. And in fact, the stipulated facts are Grant Weber's a debt collector, and collecting a debt, they're collecting it for this hospital. So there's no question what capacity they're operating under. The Court has it right when it says the FDCPA does not override obligations under state laws of a debtor. The FDCPA governs collection activity, and it's to stop unscrupulous and abusive collection practices. And, as we note in our brief, to protect the bona fide debt collectors in their good faith endeavors. And when you look at the preemption section, as we pointed out, the preemption section of the FDCPA says it would preempt state law governing conduct of the parties governed by the FDCPA, the debt collector. It doesn't say the FDCPA is a super overriding law that says debtors, you don't have to honor your obligations under state law. It just says we're going to stop unscrupulous and abusive activity. The Court, again, were right when you said there's nothing in this language that would overshadow. And the Ninth Circuit has been a great circuit in providing us clear signposts of what is overshadowing, both physically, textually, and the language. And there's nothing here. There's nothing to make this debtor think that, gee, if I avail myself of my validation rights, if I wait 30 days and send in a validation, somehow something bad's going to happen to me. Nothing. And the Court, you can look at the notice form. It was never argued that, oh, well, the validation's a little tiny type, and there's this huge type that says you have the responsibility to notify your creditor if you've changed your name, address, or employment. Nothing. It's all the same font. It all lays out nicely. The other thing I wanted to address is there's reference made to the mini Miranda, that somehow this means it overrides state law. Debtors don't have to do anything. It's called the mini Miranda because it's a rote statement Congress said to give. This is an attempt to collect a debt. Any information will be used for that purpose, similar to the Miranda warning. It doesn't have the same constitutional footing, and Congress just wanted to make it clear we're trying to collect a debt. We want you to know that. When you communicate with us, that's what we'll use it for. That's clearly told to the debtor, but that doesn't mean, Mr. Debtor, you're free of all your state law obligations. And that's what this case and this appeal is trying to turn the FDCPA into. We've addressed the preemption in our brief. Again, this is, I think, one of those unfortunate circumstances which an argument is put forth that really does harm to everybody involved in the debt collection process. One, it tries to push the FDCPA beyond governing unscrupulous conduct and turn it into a debt forgiveness statute. So it puts the debt collector in having to deal with claims that it shouldn't. And two, it trivializes the FDCPA by raising these claims and diverts attention from real abusive conduct. So I would address any questions the Court has now. I think we don't. Thank you very much. Thank you, Your Honor. Mr. Francis, rebuttal. Thank you, Your Honor. No, this is not an issue about typesetting and the font of anything that's in the letter. The issue is what would a least sophisticated debtor do upon receipt of this. The specter here is not that the debt collection process is going to break down if 178821 is found to be created. 20 cents is what the least sophisticated debt collectee would do. That's not what the statute says, is it? That's the standard that the Ninth Circuit applies to FDCPA cases, how a least sophisticated debtor would react to the information contained. And what case are you citing for that? Clark. For this particular issue? Yes, Your Honor. Okay. The question is whether a debtor who gets this letter is going to understand his rights, and Clark also says is that collectors, being the professionals in this industry, when they come close to the line, they're the ones that should bear the risk for their conduct. We're not saying the debtor should be let off the hook. What we're saying is that this is not a proper thing to have in a debt collection letter, and it's violative of the FDCPA, and, of course, that this portion of the California Civil Code is preempted. I see I'm out of time, so I'd like to thank Your Honor very much. Thank you, counsel. Thank you both for the argument. The matter just argued will be submitted.
judges: Rymer, Smith, Korman